**In re Aaron A. REPP and Stephanie Repp, Debtors.**

**Educational Credit Management Corporation, Appellant,**

**v.**

**Aaron A. Repp and Stephanie Repp, Appellees.**

**BAP No. EW–03–1225–KRYRI.**
**Bankruptcy No. 99–05994–R33.**
**Adversary No. A02–00181–R33.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 23, 2003.

Filed March 26, 2004.

Diana K. Carey, Karr, Tuttle & Campbell, Seattle, WA, Daniel S. Fisher, Educational Credit Management Corp, St. Paul, MN, for Appellant.

VanNoy Culpepper, Culpepper & Culpepper, Yakima, WA, for Appellees.

Before: KLEIN, RYAN, and RIMEL,[1] Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This is the next skirmish in the war over the use of "illegal" chapter 13 plan provisions to discharge student loan debts notwithstanding a statute that excepts such debts from the chapter 13 discharge. The pro-discharge forces won the last "discharge-by-declaration" engagement in *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 193 F.3d 1083 (9th Cir. 1999).

The specific question, still open in the Ninth Circuit, is whether a student loan creditor whose collection rights would be terminated by a chapter 13 plan provision is entitled to notice substantially equivalent to the notice required for the adversary proceeding prescribed by the Federal Rules of Bankruptcy Procedure for determining a student loan's discharge status under 11 U.S.C. § 523(a)(8).

Appellant asks us to follow the Fourth Circuit's lead in *Banks v. Sallie Mae Servicing Corp. (In re Banks),* 299 F.3d 296 (4th Cir.2002), which held that Rule 7001's requirement of an adversary proceeding, with proper service of a summons and complaint, is the due process benchmark for student loan discharge issues, and hold that merely mailing a copy of the chapter 13 plan to the creditor's payment lockbox

---

1. Honorable Whitney Rimel, Bankruptcy Judge for the Eastern District of California, sitting by designation.

does not afford due process sufficient to discharge a student loan.

We agree with the Fourth Circuit to the extent that notice less than that which results from compliance with Rule 7004's requirement for serving a complaint on a corporate defendant flunks due process. Thus, we REVERSE and REMAND.

## FACTS

Appellees, Aaron and Stephanie Repp, filed a joint chapter 13 bankruptcy petition and a chapter 13 plan on October 8, 1999.

Their chapter 13 plan proposed to pay $50.00 per month for 36 months (with $700.00 of the $1,800.00 total going to debtors' counsel), based on monthly employment income of $6,612.00, and contained the following term:

All timely filed and allowed unsecured claims, including the claims of the U.S. Dept. of Education, Aman Collection Service, and any other person or entity who is owed a governmental sponsored or governmental guaranteed educational loan, shall be paid their prorata [*sic*] share as an unsecured creditor only; and the balance of each of such claims shall be discharged. Pursuant to 11 U.S.C. § 523(a)(8), excepting the aforementioned education loans from discharge will impose an undue hardship on the debtor and the debtor's dependent children [the Repps had no children]. Confirmation of the debtor's plan shall constitute a finding by this court to that effect and that said debt is dischargeable.

One of the debts in the chapter 13 case was based on a $2,625.00 student loan that Aaron Repp had taken out in 1995, at age 21, the principal of which was paid down to $1,983.54.

Northwest Education Loan Association ("NELA") owned and serviced the loan until December 7, 1999, when it was assigned to Educational Credit Management Corporation ("ECMC").

ECMC filed a proof of claim on December 21, 1999, for $2,465.39, including unpaid interest, costs, and fees.

A copy of the plan was mailed to NELA at the postal lockbox where payments were sent.

The notice that accompanied the plan stated that any objection to plan confirmation must be filed and served "no later than twenty-one (21) days after the conclusion of the meeting of creditors or within twenty-five (25) days from the date of service of the plan, whichever is later."

A discharge under 11 U.S.C. § 1328(a) was entered on November 27, 2002, after plan payments were completed.

In September 2002, the Repps filed a two-count adversary proceeding against NELA and ECMC. Count one sought a declaratory judgment that the binding effect of the plan term, pursuant to 11 U.S.C. § 1327 and *Pardee*, discharged the student loan debt. Count two alleged a § 523(a)(8) dischargeability cause of action to discharge the student loan as an undue hardship.

ECMC answered and counterclaimed for a declaratory judgment "that the portion of the confirmation order providing that the balance of the debtors' educational loans shall be discharged upon plan completion is null and void, as no adversary proceeding was initiated prior to that provision, and the provisions violates the Fifth Amendment due process rights of defendant ECMC under U.S.C.A. Const. Amend. 5."

On cross-motions for summary judgment, the bankruptcy court granted the

debtors' motion, ruling that *Pardee* controlled.

This timely appeal ensued.

## JURISDICTION

The bankruptcy court's subject-matter jurisdiction was based on 28 U.S.C. § 1334(b). We have appellate jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE

Whether due process requires that a student loan creditor, whose debt would be discharged by a chapter 13 plan provision, receive the kind of notice required for the adversary proceeding that is the method prescribed by Federal Rule of Bankruptcy Procedure 7001(6) for determining a student loan's discharge status under 11 U.S.C. § 523(a)(8).

## STANDARD OF REVIEW

■ Whether adequate due process notice was given in any particular instance is

2. The Ninth Circuit's ruling widened a split with the Seventh Circuit by siding with the Tenth Circuit on the question of the effect of "illegal" chapter 13 plan provisions. *Compare, In re Escobedo*, 28 F.3d 34, 35 (7th Cir.1994) (offending provision "nugatory"), *with Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1258–59 (10th Cir. 1999).

3. Although the *Pardee* panel indicated that the student loan discharge question "could have or should have been litigated at the confirmation hearing," *Pardee*, 193 F.3d at 1087, it neither explained why nor considered the factors pertinent to whether the student loan debt was part of the same "transaction" that is the prerequisite for applying claim preclusion under the *Restatement (2d) of Judgments*. Nor did-the *Pardee* panel appear to note that, since claim preclusion is an affirmative defense, *see* Fed.R.Civ.P. 8(c), the debtor has the burden of proof on all elements and bears the risk of non-persuasion. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407–08 (9th Cir.1985); *Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.)*, 283 B.R. 549, 562 (9th Cir. BAP 2002); 18 CHARLES ALAN

a mixed question of law and fact that we review de novo. *Demos v. Brown (In re Graves)*, 279 B.R. 266, 270 (9th Cir. BAP 2002); *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 659 (9th Cir. BAP 1999).

## DISCUSSION

■ The Ninth Circuit held in *Pardee* that, regardless of whether a chapter 13 plan should originally have been confirmed, the preclusive effect of plan confirmation orders extended to a provision discharging a student loan notwithstanding § 1328(a)(2) and Rule 7001(6)'s requirement that student loan discharge issues under § 523(a)(8) be resolved in an adversary proceeding. *Pardee*, 193 F.3d at 1087.[2] Thus, we proceed from the premise that *Pardee* licenses the use of a chapter 13 plan provision to discharge Aaron Repp's student loan.[3]

WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4405 (2003).

The analysis under *Restatement* § 24 ("Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning Splitting") is to be done "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, *whether they form a convenient trial unit*, and *whether their treatment as a unit conforms to the parties' expectations* or business understandings or usage." RESTATEMENT (2D) OF JUDGMENTS § 24 ("RESTATEMENT") (emphasis supplied); *see, e.g., Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982); *Alary*, 283 B.R. at 555–61. The "convenient trial unit" and the "parties' expectations" are factors that appear to loom large in the context of using chapter 13 plan confirmation to preempt adversary proceedings. *Alary*, 283 B.R. at 562.

Moreover, even if a student loan dischargeability question could be regarded as part of the same "transaction" for purposes of claim preclusion under *Restatement* § 24, the *Pardee* panel did not consider whether *Restatement*

The due process question that remains open in the Ninth Circuit after *Pardee* is what notice is required to be given to the student loan creditor before a chapter 13 plan provision can be effective, in the face of a due process challenge, to discharge a student loan debt. This precise question has been squarely confronted only by the Fourth Circuit. *Banks,* 299 F.3d at 302.[4]

Our slate, however, is not entirely clean. We have, in an analogous situation, sustained a due process challenge to the use of a sale order as a vehicle to short-circuit the requirement of an adversary proceeding to resolve a priority dispute among lienors. *Loloee,* 241 B.R. at 660–62. Likewise, although the due process rationale may be dictum in light of the concurrence, we have sustained a due process challenge to the use of a chapter 13 plan to trump the claims allowance process. *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy),* 130 B.R. 318, 320–21 (9th Cir. BAP 1991).

### I

■ The cornerstone of modern due process analysis is *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object. It must be of such a nature as reasonably to

convey the required information and afford a reasonable time for response. *Mullane,* 339 U.S. at 314, 70 S.Ct. 652.

■ The key inquiry is whether the method chosen for service is "reasonably certain" to convey the required information and "not substantially less likely" to convey notice than other known and feasible methods. As the Court put it:

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary methods.

*Mullane,* 339 U.S. at 315, 70 S.Ct. 652 (citations omitted).

The nub of the problem in this appeal is that the method chosen for notice was calculated to minimize the chance that it would come to the attention of persons in the position to make litigation decisions for the creditor.

§ 26(1)(d)'s exception to the Rule Concerning Splitting should be applied in light of the statutory scheme established by §§ 523(a)(8), 1327, and 1328(a)(2), read in conjunction with Fed. R. Bankr.P. 7001(6) (requiring adversary proceeding for debt dischargeability questions). Under that exception, preclusion does not apply when it is "plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of that scheme that the plaintiff should be permitted to split his claim." RESTATEMENT § 26(1)(d).

While the absence of analysis under *Restatement* §§ 24 and 26 suggests that the *Pardee* preclusion doctrine might not be firmly rooted, we proceed on the assumption *Pardee* is viable precedent.

4. The dissent to the BAP decision in *Pardee* indicated that a due process issue lurked in the case. *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 218 B.R. 916, 937 (9th Cir. BAP 1998) (dissent). Our majority ignored the point and nobody pursued the issue at the court of appeals.

## II

A fundamental purpose of the Federal Rules of Bankruptcy Procedure is to set forth what process is due in various categories of bankruptcy matters.

The category in question involves how one is to proceed to make the ultimate determination upon which the Bankruptcy Code makes the discharge of a student loan debt turn: whether "excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).[5]

### A

The rules prescribe that "a proceeding to determine the dischargeability of a debt" be an adversary proceeding conducted under Part VII of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr.P. 7001(6).

The differences between an adversary proceeding under the Federal Rules of Bankruptcy Procedure and a civil action under the Federal Rules of Civil Procedure are slight. Klein, *Bankruptcy Rules Made Easy (2001): A Guide to the Federal Rules of Civil Procedure that Apply in Bankruptcy*, 75 AM. BANKR. L.J. 35, 38–39, 52–55 (2001).

Rule 7004(a) directly incorporates Civil Rule 4(c)(1), which mandates that the summons be served "together with a copy of the complaint." Fed. R. Bankr.P. 7004(a), *incorporating* Fed.R.Civ.P. 4(c)(1).[6]

Although bankruptcy service procedure permits nationwide service of the summons and complaint by first class mail, Fed. R. Bankr.P. 7004(d), it is nevertheless precise about who must be served.

Service by mail upon a corporation must be directed to the same persons that Civil Rule 4(h)(1) requires be served: to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Fed. R. Bankr.P. 7004(b)(3), *incorporating* Fed.R.Civ.P. 4(h)(1).[7]

---

**5.** The precise question in chapter 13 is whether the debt is "of the kind specified" in § 523(a)(8) because § 1328(a)(2) provides that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—... (2) *of the kind* specified in paragraph ... (8), ... of section 523(a) of this title." 11 U.S.C. § 1328(a)(2) (emphasis supplied).

Section 523(a)(8) provides that the discharge under chapters 7, 11, and 12 excludes: any debt ... (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8).

**6.** Rule 7004(a) provides:

(a) Summons; Service; Proof of Service. Rule 4(a), (b), (c)(1), (d)(1), (e)–(j), (*l*), and (m) F.R.Civ.P. applies in adversary proceedings. Personal service pursuant to Rule 4(e)–(j) F.R.Civ.P. may be made by any person at least 18 years of age who is not a party, and the summons may be delivered by the clerk to any such person.
Fed. R. Bankr.P. 7004(a).

**7.** Rule 7004(b)(3) provides:

(b) Service by First Class Mail. Except as provided in subdivision (h) [service on insured depository institutions], in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows: ...
(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general

The obligation to answer the adversary proceeding complaint is not triggered until the complaint is "duly served." Fed. R. Bankr.P. 7012(a).[8]

It is likewise axiomatic that proper service is a prerequisite to entry of default and default judgment for affirmative relief. Without proper service, the defendant cannot be said to have "failed to plead or otherwise defend as provided by these rules." Fed.R.Civ.P. 55(a), *incorporated by* Fed. R. Bankr.P. 7055.

The merits of an adversary proceeding are resolved by trial, which is a bench trial in the case of a dischargeability proceeding. Fed.R.Civ.P. 39–43, *incorporated by* Fed. R. Bankr.P. 7040–42, 9015 & 9017. Preparation for trial is based on the standard pretrial process, including scheduling and pretrial conferences and mandatory Rule 26 disclosures. Fed.R.Civ.P. 16 & 26, *incorporated by* Fed. R. Bankr.P. 7016 & 7026.

At the conclusion of the bench trial, the court is required to make findings of fact and conclusions of law. Fed.R.Civ.P. 52, *incorporated by* Fed. R. Bankr.P. 7052.

■ In the case of a § 523(a)(8) student loan proceeding, the effect of Civil Rule 52 is that the bankruptcy court must make findings addressed to whether the loan was made, issued, or guaranteed by a enti-

ty covered by that section and whether excepting the debt from discharge would impose an "undue hardship" on the debtor and dependents. 11 U.S.C. § 523(a)(8).

■ In order to establish the requisite "undue hardship," the debtor has the burden to demonstrate: (1) inability to maintain, based on current income and expenses, a minimal standard of living if forced to repay the student loan; (2) additional circumstances indicating that this state of affairs is likely to persist for a considerable period; and (3) good faith efforts to repay the loan. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111 (9th Cir.1998).

Since a dischargeability adversary proceeding is a "core proceeding" that a bankruptcy judge is authorized to "hear and determine," it culminates with a judgment entered in the same manner as a civil action. 28 U.S.C. § 157(b)(2)(I); Fed.R.Civ.P. 58, *incorporated by* Fed. R. Bankr.P. 9021. Once final, the judgment may be appealed as of right. 28 U.S.C. §§ 158(a) & (d).

### B

The procedure for confirming a chapter 13 plan is materially different from adversary proceeding procedure and, moreover,

---

agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
Fed. R. Bankr.P. 7004(b)(3).

8. Rule 7012(a) is recognizable to anyone familiar with federal civil litigation and provides in relevant part:
 (a) When Presented. *If a complaint is duly served*, the defendant shall serve an answer within 30 days after the issuance of the summons [which expires 10 days after issuance], except when a different time is

prescribed by the court.... [other times/pleadings omitted] ... The service of a motion permitted under this rule [i.e. F.R.Civ.P. 12 motions] alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; (2) if the court grants a motion for a more definite statement, the responsive pleading shall be served within 10 days after the service of a more definite statement.
Fed. R. Bankr.P. 7012(a).

is more streamlined than chapter 11 confirmation procedure.

Notice of the time fixed for filing objections and the hearing on chapter 13 plan confirmation is given to all creditors pursuant to Rule 2002(b). Fed. R. Bankr.P. 2002(b)(2).

The Rule 2002(b) notice regarding chapter 13 plans need only include a summary of the plan. Fed. R. Bankr.P. 3015(d).

Unlike Rule 7004's service requirement for adversary proceedings, the Rule 2002(b) notice requirement regarding chapter 13 plans need only be mailed to nobody-in-particular at the address provided by the debtor on the list of creditors or schedule of liabilities, unless the creditor has designated a mailing address in a filed proof of claim or request for notice. Fed. R. Bankr.P. 2002(g).

Chapter 13, unlike chapter 11, is not predicated on a negotiation model in which creditors have the leverage attendant to their ability to accept or reject a plan. Chapter 13 creditors generally have no opportunity to negotiate their treatment under a plan and are left only with their power to object that the plan does not comply with the terms of the statute. *Compare* 11 U.S.C. § 1129, *with id.* § 1325; *see* Fed. R. Bankr.P. 3016–18. Thus, chapter 13 has no counterpart to the chapter 11 disclosure process in which plan proponents must solicit votes using statements that have been approved by the court as containing "adequate information." 11 U.S.C. § 1125.

Of greatest significance, nothing in the structure of chapter 13 plan confirmation procedure contemplates the resolution of discrete disputes that ordinarily require adversary proceedings to resolve.

## III

The ultimate question is whether the notice of the student loan discharge provision in Repp's chapter 13 plan was, in the words of the Supreme Court in *Mullane,* "reasonably calculated to reach" the persons at ECMC and NELA who are responsible for making litigation decisions. *Mullane,* 339 U.S. at 319, 70 S.Ct. 652.

■ In assessing this question, we bear in mind that error greater than merely incorrect procedure is needed in order to offend the Due Process Clause of the Fifth Amendment. *Owens–Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.),* 759 F.2d 1440, 1448 (9th Cir.1985); *Loloee,* 241 B.R. at 660–1.

As to the basic chapter 13 plan, notice was adequate. Since no proof of claim was on file when Rule 2002(b) notice of the confirmation hearing and deadline to object was mailed, Rule 2002(g) permitted the notice to be mailed to nobody-in-particular at NELA's payment lockbox. There is, thus, nothing to criticize in the adequacy of notice of matters that legitimately belong in chapter 13 plans.

■ The student loan discharge provision, however, was a so-called "illegal" provision that did not belong in a chapter 13 plan. *In re Webber,* 251 B.R. 554, 557–58 (Bankr.D.Ariz.2000) (Haines, J.).

■ The fact that it was an "illegal" provision connotes two important expectations upon which the student loan creditor is entitled to rely. First, one is entitled to expect that the bankruptcy court will perform its independent duty to confirm only those plans that do not contravene the Bankruptcy Code and rules of procedure.[9]

9. Judge Rossmeissl has published a decision enforcing similar plan provisions on the authority of *Pardee,* but announcing that he was

persuaded by, and would thenceforth follow, Judge Haines' *Webber* decision with respect to plan confirmation:

*Barnes v. Barnes (In re Barnes),* 32 F.3d 405, 407 (9th Cir. BAP 1994), *citing with approval, In re Lucas,* 3 B.R. 252, 253 (Bankr.S.D.Cal.1980); *Universal Am. Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821, 828 n. 6 (11th Cir. 2003) ("Moreover, it is the independent duty of the bankruptcy court to ensure that the proposed plan comports with the requirements of the bankruptcy code.").

 Second, Rule 7001(6)'s requirement of an adversary proceeding creates the reasonable expectation that a § 523(a)(8) dischargeability issue need not be responded to, and will not be addressed by the court, until there has been proper service of a summons and complaint pursuant to Rule 7004.

This expectation of a heightened degree of notice is reinforced within Rule 7001 itself by two other rules—Rules 7001(7) and 7001(8)—that expressly provide for the alternative of dealing with a matter either through adversary proceeding or plan. Fed. R. Bankr.P. 7001(7) & 7001(8).[10]

To hold that student loan creditors are not entitled to defer responding to a § 523(a)(8) discharge question until there has been notice meeting the standards required in an adversary proceeding, places them in an unfair Catch–22. It is black-letter law that they are not required to respond per Rule 7012 until they have been "duly served" in accordance with Rule 7004 and need not fear a default judgment if they have not been "duly served." Yet—Catch–22—if they do not respond to notice of a plan mailed in accordance with Rule 2002 to nobody-in-particular at a payment lockbox, they stand to lose their rights by default to an "illegal" plan provision that they—double Catch–22—are entitled to expect the court, in the exercise of its independent duty, to reject in the first place.

In *Banks,* on essentially the same facts as the instant appeal, the Fourth Circuit ruled that ECMC did not receive the requisite notice of the debtor's intent to discharge his post-petition interest on his student loan debt and held that "[f]or lack of adequate notice, the confirmation and discharge orders discharging the interest are not entitled to preclusive effect." *Banks,* 299 F.3d at 303. The specific rationale was "where the Bankruptcy Code and Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the

---

The Court's ruling should not be interpreted as an approval or validation of the plan language at issue. This court agrees with those recent decisions which disapprove of the practice of dealing with the issue of discharge of student loans in the plan confirmation process. [Citations omitted.] This Court will not knowingly confirm a plan which contains language that attempts to discharge student loan debt independent of an adversary proceeding. [Footnote omitted.] Inclusion of plan provisions which attempt to circumvent determination by adversary proceeding of dischargeability of student loans through the plan confirmation process is improper, but plans confirmed with such provisions will be binding on the parties if the confirmation order is not appealed or revoked.

However inclusion of these provisions may be the subject of sanctions.
*Patton v. U.S. Dept. of Educ. (In re Patton),* 261 B.R. 44, 48 (Bankr.E.D.Wash.2001).

10. This rule provides:

The following are adversary proceedings:
. . .
(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
Fed. R. Bankr.P. 7001(7) & 7001(8).

party will be afforded preclusive effect." *Id.*, at 303 n. 4.

We agree with the Fourth Circuit's *Banks* analysis, which is consistent with our *Loloee* decision, and note an emerging consensus on the point. *Ruehle v. Educ. Credit Mgmt. Corp (In re Ruehle)*, 307 B.R. 28, 33-34 (6th Cir. BAP 2004), 2004 WL 527119, at *3–*4, *aff'g* 296 B.R. 146 (Bankr.N.D.Ohio 2003); *Kaufman v. Case W. Reserve Univ.*, 2002 WL 31972171, at *3–*4, Bankr.L. Rep. ¶ 78,770 (M.D.Tenn. 2002); *Educ. Credit Mgmt. Corp. v. Whelton (In re Whelton)*, 299 B.R. 306, 315–18 (Bankr.D.Vt.2003); *In re Harris*, 293 B.R. 438, 441 (Bankr.N.D.Ohio 2003); *In re Lemons*, 285 B.R. 327, 330–31 (Bankr. W.D.Okla.2002). *But cf., Educ. Credit Mgmt. Corp. v. Boyer (In re Boyer)*, 305 B.R. 42, 52 (Bankr.D.Kan.2004) (*Banks* is correct but *Andersen* conflicts and is binding in Tenth Circuit).

The minimal service requirements for chapter 13 plan confirmations cannot be used as a way to stay below the creditor's radar and elude the obligation to demonstrate "undue hardship" in an adversary proceeding in the usual adversarial format. Although stealth may achieve surprise at the tactical level, the strategic problem is that "below the radar" is also fatally below the due process threshold.

\* \* \* \* \* \*

The order granting the debtor's summary judgment motion will be reversed on due process grounds.

Since count two of the complaint, which the court closed out as moot, presented the § 523(a)(8) "undue hardship" issue in the proper adversary proceeding context, our reversal operates to revive count two.

Accordingly, we REVERSE and REMAND for further proceedings.

RYAN, Bankruptcy Judge, dissenting.

The majority disregards the Ninth Circuit's holding in *Pardee* based on ECMC's claim that it was not provided due process. The majority follows the reasoning in *Banks*, which refused to follow *Pardee*, and reverses the bankruptcy court. I respectfully disagree with the majority's views and therefore dissent.

The *Pardee* court agreed with the BAP that "Great Lakes' failure to object to the plan or to appeal the confirmation order 'constitutes a waiver of its right to collaterally attack the confirmed plan postconfirmation on the basis that the plan contains a provision contrary to the Code.'" 193 F.3d at 1085.

In *Pardee*, the Ninth Circuit pointed out that Pardee's plan contained a provision discharging post-petition interest on their student loan debt, and the creditor (Great Lakes) had notice of the plan and the discharge provision. However, Great Lakes "failed to take an active role in protecting its own interests." *Id.* at 1086. The Ninth Circuit agreed with the Tenth Circuit's view in *Andersen* that a creditor cannot sit on its rights and expect the bankruptcy court or trustee to protect its interests. *Id.* Therefore, it gave preclusive effect to the confirmation order.

The facts here are consistent with *Pardee*. The creditor (ECMC) had actual notice of the confirmation hearing and received a copy of the plan. Instead of reviewing the plan and filing an objection to the offending discharge provision, ECMC sat on its rights and did not object. It also failed to seek a timely reconsideration or appeal the plan order. Only after the plan was performed years later and a discharge entered did ECMC raise the due process argument in response to the Repps' declaratory judgment action.

As stated, the Ninth Circuit has decided that when a student loan creditor has actual notice, in accordance with Rule 2002(b), of a plan discharge provision that adversely affects it, the creditor must object or it will be held to have waived the objection. Inherent within this principle of law is that due process has been satisfied. I acknowledge that the issue of due process was not specifically raised in *Pardee*. However, the idea that a creditor with more than twenty-five days notice of a plan containing a provision that adversely affects it can ignore the proceeding, sit on its rights, and then raise a due process argument years later defies common sense.

The Supreme Court in *Mullane* established the standard for due process as "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." 339 U.S. at 314, 70 S.Ct. 652. An inadequate notice results in a void order. *See Center Wholesale*, 759 F.2d at 1448. Obviously, the notice must be sufficient to inform the interested party that its rights could be adversely affected, thereby providing the party with a choice to appear or default. *See Mullane*, 339 U.S. at 314, 70 S.Ct. 652. The party must also be given sufficient time to appear. *Id.* Further, the type of notice must be of a kind that will inform the party with reasonable certainty. *Id.* at 315, 70 S.Ct. 652.

In *Center Wholesale*, the Ninth Circuit held that the notice provided did not meet the due process standards for timeliness and specificity "in light of the Bankruptcy Code's statutory requirements, safeguards, and remedies." 759 F.2d at 1448. The bankruptcy court had issued a final order approving use of cash collateral that adversely affected secured creditor Owens–Corning. Notice was given by a one-day mailgram that provided insufficient information to permit Owens–Corning to prepare and present its objections. *Id.*

The facts here are dramatically different. ECMC received actual notice of the plan hearing and a copy of the plan with the twenty-five days notice provided for in Rule 2002(b). ECMC had plenty of time to review the plan and file an objection. As the Supreme Court stated in *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" ECMC certainly knew, or should have known, because the plan clearly stated, that confirmation of the plan would lead to discharge of its claim. It had more than sufficient time to prepare and present its objections. However, it simply chose to sit on its rights and waive its opportunity to object.

Despite a similar factual backdrop, the Fourth Circuit in *Banks* chose to disregard the res judicata precedent of the Ninth and Tenth Circuits. The *Banks* court held that "where the Bankruptcy Code and Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." 299 F.3d at 303 n. 4. This per se rule in the Fourth Circuit is contrary to the expressed principles governing due process set forth in *Mullane*. *Mullane* does not hold that failure to follow a rule of service alone suffices to establish a lack of due process. According to *Banks* and the majority, the failure to follow Rule 7001 and serve ECMC with a summons and complaint in accordance with Rule 7004(b)(3) and give ECMC 30 days to answer per se results in a lack of due process.

This is contrary to *Mullane's* guidance that the notice must be reasonably calculated to inform the interested party of the substance of the action and give the party a fair opportunity to respond. 339 U.S. at 314–15, 70 S.Ct. 652. This necessitates a case by case analysis. Constitutional due process is not automatically violated with the breach of a service rule. In *Banks,* the Fourth Circuit refused to give res judicata affect to the confirmation order, not because ECMC lacked actual notice of the impact of the plan on it or an opportunity to prepare an obligation, but simply because it did not get the requisite Rule 7001 procedural rights. This is simply not the appropriate test for deciding if ECMC received due process.

It should be pointed out that ECMC was a creditor, had filed a claim, and knew or should have known that its rights could be affected by the plan. It cannot stick its head in the sand, ignore the plan terms, and later claim foul play because it is adversely impacted by the plan. Due process does not place substance over form. Here, the substance is that ECMC had actual knowledge of the plan terms and chose to default. It cannot now seek a second bite of the apple by way of a due process argument.

The majority also cites to our decision in *Loloee* as further support that ECMC was denied due process. But the facts in *Loloee* are very different than what we have here. In *Loloee,* GMAC was not properly served in accordance with Rule 9014, no copy of the notice was served, the notice did not suggest that GMAC's lien priority was disputed, and the service did not accord with the requirements of the local rules. *See* 241 B.R. at 660. Most importantly, the bankruptcy court held no hearing. *See id.* at 658. Therefore, GMAC had no opportunity to be heard. Lastly, the language in the order was ambiguous and failed to put GMAC on notice that its lien rights were adversely impacted. *See id.* at 661. As we said, "[h]olders of liens that may be adversely affected are entitled to unambiguous notice and an adequate opportunity to reflect and to respond." 241 B.R. at 662. GMAC did not have that right, but as night is different from day, ECMC did here.

Lastly, the majority and some courts take the position that there is an element of unfairness here. They take the position that the debtor and debtor's attorney should not seek to discharge student loan debt through a plan. If this is a court's position, it can follow Judge Haines' approach in *Webber* and deny confirmation of a plan with such a provision. The chapter 13 trustee can object, if appropriate. Also, the court can sanction under Rule 9011 to the extent that the inclusion of such provisions is inappropriate as a matter of law. [I would point out, however, that the issue of the dischargeability of interest on a student loan (which was the provision in *Pardee*) has not yet been decided by the Ninth Circuit. See *Pardee,* 193 F.3d at 1085 n. 3.] Therefore, there are various ways of attacking this perceived unfairness problem without circumventing the res judicata holding of *Pardee* and without stretching the concept of due process beyond its appropriate boundaries.

Accordingly, for all the above reasons, I respectfully dissent and would affirm the bankruptcy court.